IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| 4LICENSING CORPORATION, a | ) | |
| Delaware corporation, | ) | Case No.:  16-11714-M |
| | ) | (Chapter 11) |
| | ) | (Judge Michael) |
| Debtor. | ) | |
| | ) | |

**COMBINED CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT FOR 4LICENSING CORPORATION**

**ARTICLE 1:  INTRODUCTION AND SUMMARY OF PLAN OF REORGANIZATION**

This Combined Chapter 11 Plan of Reorganization and Disclosure Statement is prepared in compliance with Section 1125 of the Bankruptcy Code (the "Plan") for 4Licensing Corporation ("Debtor").  Debtor is a "small business debtor" as defined in Section 101(51D) of the Bankruptcy Code.  Capitalized terms used herein without definition shall have the meaning ascribed to them in Exhibit A attached hereto.

The Plan provides for, among other things, (a) the recapitalization of Debtor, (b) exchange of secured debt into equity of Reorganized Debtor, (c) purchase of equity of Reorganized Debtor for cash, (d) payment in full in cash of Administrative Claims and Priority Claims, and (e) the cancellation of existing equity of Debtor.  The Plan also provides for a distribution to holders of Unsecured Claims.  Debtor intends to continue operating its business during the Reorganization Case in the ordinary course and to pay its ordinary course creditors in full and on time.  All Classes of Claims under the Plan are Impaired.

After the Effective Date and the distribution of the New Common Stock in exchange for Debtor's secured claims and cash, Reorganized Debtor shall continue to exist after the Effective Date as a corporate entity, owned by Buyer and Prescott[1], with all powers of a corporation under the laws of the State of Delaware.  Except as otherwise expressly provided in the Plan, on the Effective Date Reorganized Debtor shall be vested with all of the Vested Assets free and clear of all claims, liens, encumbrances, charges and other interests of creditors and equity security holders, and may operate its business free of any restrictions imposed by the Bankruptcy Code or by the Court.

The Bankruptcy Code provides that only holders who vote on the Plan will be counted for purposes of determining whether the requisite acceptances of the Classes of Claims have been received.  Failure by a holder of a Claim to deliver a duly completed and signed Ballot by

---

[1] Rudd will have an option granted on the Effective Date to acquire New Common Stock in exchange for its Allowed Secured Claim.

the Expiration Date will constitute an abstention by such holder with respect to a vote on the Plan. Abstentions will not be counted as votes to accept or reject the Plan and, therefore, will have no effect on the voting with respect to the Plan. If Debtor does not receive the requisite acceptances by the Expiration Date or if the Court declines to confirm the Plan, Debtor will evaluate other options in connection with the Reorganization Case.

Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to revoke and withdraw the Plan. If Debtor revokes or withdraws the Plan, or if entry of the Confirmation Order does not occur, then the Plan shall be deemed null and void. In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, Debtor, to prejudice in any manner the rights of Debtor in any further proceedings involving Debtor, or constitute an admission against interest by Debtor or any other party in interest.

Confirmation of the Plan and the occurrence of the Effective Date are subject to a number of material conditions precedent. There can be no assurance that these conditions will be satisfied or waived.

Debtor has filed with the Bankruptcy Court its Appendix of Relevant Documents and it is found at Docket No. 23 (the "Appendix"). The Appendix is intended to make available to the Court and parties in interest documents pertaining to Debtor filed in Debtor's prior bankruptcy case and filed with the SEC.

All holders of Class 1 through 4 Claims entitled to vote in connection with this solicitation are urged to vote in favor of the Plan. To be counted, your Ballot must be received not later than the voting deadline established by the Court. You will be notified by subsequent notice of such voting deadline. .

## ARTICLE 2:  CLASSIFICATION OF CLAIMS AND INTERESTS

The classification of the Claims and Equity Interests listed below shall be for all purposes, including voting, confirmation and distribution pursuant to the Plan. A Claim or Equity Interest is in a particular Class only to the extent that the Claim or Equity Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date; a Claim or Equity Interest that is not an Allowed Claim or Allowed Interest is not in any Class.

**Class 1 – Priority Claims.** Class 1 consists of all Allowed Priority Claims, not otherwise treated as unclassified under the Plan. Debtor is unaware presently of any Priority Claims.

**Class 2 – Prescott Secured Claims.** Class 2 consists of the holder of the Allowed Prescott Secured Claims.

**Class 3 – Rudd Secured Claim.** Class 3 consists of the holder of the Allowed Rudd Secured Claim.

**Class 4 – Unsecured Claims.**  Class 4 consists of all holders of Allowed Unsecured Claims.

**Class 5 – Equity Interests**.  Class 5 consists of all holders of Equity Interests.

## ARTICLE 3:  TREATMENT OF CLASSES OF CLAIMS

**3.01     Class 1 Priority Claims.**  Allowed Claims in Class 1 are Impaired.  Unless otherwise agreed to by the parties, each holder of an Allowed Priority Claim shall be paid the Allowed Amount of such Claim in full in cash twenty (20) days after the date such Priority Claim becomes an Allowed Priority Claim.

**3.02     Class 2 Prescott Secured Claims.**  The Class 2 Claim is Impaired and deemed Allowed as scheduled by the Debtor.  Prescott will be paid on the Effective Date by conversion of Prescott Note 1 into 58,000 shares of New Common Stock.  Prescott Notes 2, 3 and 4 will be paid collectively on the Effective Date the amount of $112,633.00.  On the Effective Date, the Vested Assets shall vest in Reorganized Debtor free and clear of the liens, claims, interests and encumbrances of Prescott.  Prescott has agreed to waive any deficiency claim that would be a Class 4 Claim arising from the failure to pay Prescott's Class 2 Claim in full if Class 4 votes to accept the Plan.

**3.03     Class 3 Rudd Secured Claim.**  The Class 3 Claim is Impaired.  Rudd will be paid on the Effective Date by one of the following treatments depending on an election to be made by Rudd within 60 days after the Effective Date:  (a) conversion of the Rudd Note into 3,673 shares of New Common Stock or (b) the payment of $44,344.00.  On the Effective Date, the Vested Assets shall vest in Reorganized Debtor free and clear of the liens, claims, interests and encumbrances of Rudd.  Rudd has agreed to waive any deficiency claim that would be a Class 4 Claim arising from the failure to pay Rudd's Class 3 Claim in full if Class 4 votes to accept the Plan.

**3.04     Class 4 Unsecured Claims.**  Allowed Claims in Class 4 are Impaired.  Each Class 4 claimant shall receive its pro rata share of the Distribution Fund that shall be the amount of $10,000.  Payments to holders of Class 4 Claims shall be made after the final determination of the amount of all Allowed Class 4 Claims.  Payments to holders of Allowed Class 4 Claims shall be made by Reorganized Debtor from the Distribution Fund, which shall be funded on the Effective Date.  The total amount of Class 4 Claims may be in the range of $1,352,816 to $265,897 but could be substantially different than the amount provided herein.  Actual percentage recoveries in Class 4 shall vary based upon the actual amount of total Class 4 Claims. Debtor's best estimate of distributions to holders of Allowed Class 4 Claims shall be in the range of .74% to 3.76% depending if Class 4 votes to accept the Plan.  The distributions to holders of Allowed Class 4 Claims will be substantially less than this estimate if Class 4 does not vote in favor of the Plan and Prescott and Rudd's deficiency claims are included in Class 4.  Until such time as the amount of Allowed Class 4 Claims is determined, it is impossible to ascertain with any certainty the amount that each holder of an Allowed Class 4 Claim will receive pursuant to this Plan.

**3.05     Class 5 Equity Interests**.  Holders of Equity Interests in Class 5 shall receive no distribution on account of such Equity Interests and such Equity Interests shall be cancelled and extinguished on the Effective Date.

**3.06     Summary of Classification and Distributions under this Plan.**

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Class 1 | Priority Claims | Paid under the Plan; impaired and entitled to vote |
| Class 2 | Prescott Secured Claim | Paid under the Plan in part by issuance of New Common Stock and in part by cash equal to approximately 44% of its claim; impaired and entitled to vote |
| Class 3 | Rudd Secured Claim | Granted an option to either by paid under the Plan by issuance of New Common Stock or by cash equal to approximately 44% of its claim; impaired and entitled to vote |
| Class 4 | Unsecured Claims | Paid a percentage of claims in cash; impaired and entitled to vote |
| Class 5 | Old Equity | Old Equity is cancelled under the Plan and receives nothing under the Plan; impaired and deemed to have rejected the Plan |

**ARTICLE 4:  RECAPITALIZATION OF DEBTOR AND IMPLEMENTATION OF THE PLAN**

**4.01     Recapitalization of Debtor.**  Debtor shall issue New Common Stock in exchange for Allowed Secured Claims and cash.  Buyer shall purchase 38,327 shares of the New Common Stock for the total purchase price of $462,673 that represents 38.3% of the New Common Stock. Debtor shall issue 58,000 shares of New Common Stock to Prescott in payment for that portion of the Allowed Prescott Secured Claim represented by Prescott Note 1 and such shares shall represent 58% of the New Common Stock.   Debtor shall grant an option to Rudd whereby Rudd can acquire 3,673 shares of New Common Stock in satisfaction of the Allowed Rudd Secured Claim and such shares shall represent 3.7% of the New Common Stock.  In the event that Rudd

elects to receive cash in satisfaction of its Allowed Class 3 Claim, Buyer will purchase the shares of New Common Stock offered to Rudd (3,673 shares) for the additional price of $44,344. Buyer and Prescott will be the sole shareholders of Reorganized Debtor on the Effective Date unless Rudd shall have exercised its option to purchase New Common Stock.

Debtor is presently managed by Phil Frohlich as its sole director, president, and the person designated to discharge the duties of the debtor in possession in this bankruptcy case. Mr. Frohlich is also the control person of Prescott and the person identified as the Buyer under this Plan. Mr. Frohlich's purchase of New Common Stock for cash will be the source of payments to holders of Class 1, 2, 3 and 4 under the Plan. Mr. Frohlich is the founder of Prescott Group Capital Management, LLC, an investment company for high net worth investors, and has served as its managing partner since 1993. He was formerly president of Siegfried Companies, Inc. and a tax principal with the international accounting firm Ernst & Young. Mr. Frohlich received a BBA in economics with special distinction from the University of Oklahoma in 1976, an MBA from the University of Texas at Austin with highest honors in 1980, and was awarded a law degree with honors from the University of Tulsa in 1993. Mr. Frohlich presently serves as Board Chair for Tulsa's Gathering Place, LLC, Trustee, George Kaiser Family Foundation, and a Board Member for Tulsa Educare and the Tulsa River Parks Authority.

**4.02   Continued Corporate Existence and Vesting of Assets in Reorganized Debtor.** Debtor shall continue as a debtor in possession under the Bankruptcy Code until the Effective Date, and thereafter, subject to the terms of this Plan, Reorganized Debtor shall operate its business free of any restriction imposed by the Bankruptcy Code or the Court. 4Licensing Corporation shall, as Reorganized Debtor, continue to exist after the Effective Date as a corporate entity, with all powers of a corporation under the laws of the State of Delaware without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law. Except as otherwise expressly provided in the Plan, on the Effective Date Reorganized Debtor shall be vested with all of the Vested Assets free and clear of all claims, liens, encumbrances, charges and other interests of creditors and equity security holders, and may operate its business free of any restrictions imposed by the Bankruptcy Code or by the Court. Except as otherwise expressly provided in this Plan, any security interest or lien encumbering the Vested Assets shall be deemed released and the holder of such security interest or lien shall deliver to Reorganized Debtor any collateral or other property of Reorganized Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of any security interests and liens that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic or tax liens, judgments, or lis pendens.

**4.03   Amended and Restated Certificate of Incorporation.** On or before the Effective Date, Debtor shall file an amended and restated certificate of incorporation with the Secretary of State of the State of Delaware that shall be effective for Reorganized Debtor on the Effective Date. Reorganized Debtor's amended and restated certificate of incorporation will, among other things, provide (to the extent necessary to effectuate the terms of the Plan) for (i) the prohibition of the issuance of non-voting equity securities, (ii) the authorization of the New Common Stock, (iii) provisions allowing for director and shareholder resolutions by consent in lieu of a meeting, (iv) all dividends, whether cash, property or stock, shall be shared ratably among all holders of New Common Stock, and (v) in the event of the voluntary or involuntary liquidation, dissolution or winding up of Reorganized Debtor, the holders of New

5

Common Stock shall be entitled to share in all of the remaining assets of Reorganized Debtor of whatever kind available for distribution to stockholders.

Reorganized Debtor's Amended and Restated Certificate of Incorporation will provide that Reorganized Debtor will be authorized to issue 100,000 shares of New Common Stock. Each share of New Common Stock held of record as of the record date of any meeting shall be entitled to vote on each matter submitted to a vote of the stockholders.

**4.04    Amended and Restated By-laws**.  Reorganized Debtor may adopt and effect amended and restated by-laws in accordance with Delaware General Corporation Law.

**4.05    New Securities.**  On the Effective Date, Reorganized Debtor shall issue the New Common Stock.   The New Common Stock shall be exempt from registration under any applicable federal (including the Securities Act and the Exchange Act), state or local law, rule or regulation or other applicable law requiring registration before the offering, issuance, distribution or sale of securities.  In order to maximize the ability of Reorganized Debtor to utilize certain tax attributes, including substantial net operating losses, the shares of New Common Stock may have restrictions on its transfer.

**4.06    Cancellation of Old Equity.**  On the Effective Date, Old Equity and all the documentation relating thereto shall be cancelled and all obligations of Debtor under or in respect of Old Equity shall be terminated.

**4.07    Management of Reorganized Debtor.**  Upon the Effective Date, the operation of Reorganized Debtor shall become the general responsibility of its board of directors who shall, thereafter, have the responsibility for the management, control and operation of Reorganized Debtor.  The board of directors and officers of Reorganized Debtor shall consist of the following individuals:

| | |
|---|---|
| Phil Frohlich | President, Chief Executive Officer, and Director |
| Karen Ramsey | Chief Financial Officer |
| Jeff Watkins | Director |
| Matt Dunham | Secretary and Director |

Such persons shall be deemed elected pursuant to the Confirmation Order, and such elections shall be effective on and after the Effective Date, without any requirement of further action by stockholder(s) of Reorganized Debtor. Any modifications to Debtor's governing documents shall be effective on and after the Effective Date, without any further action by Debtor or the directors or stockholder(s) of Reorganized Debtor.  In the event that Rudd elects to receive New Common Stock on account of its Allowed Secured Claim, a representative of Rudd may be appointed to the Board of Directors of Reorganized Debtor.

**4.08    Other Documents and Actions.**  Debtor and Reorganized Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

**4.09     Corporate Actions.**  The issuance of the New Common Stock, the adoption of the Amended and Restated Certificate of Incorporation and By-laws by Reorganized Debtor, the selection of certain directors and officers of Reorganized Debtor, the execution and delivery of any documents to be executed and delivered under the Plan and other matters under the Plan involving the corporate structure of Reorganized Debtor or corporate action by Reorganized Debtor shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by stockholder(s) or director(s) of Debtor pursuant to and in accordance with applicable law.

**4.10     Unclaimed Distributions**.   If any holders of Allowed Claims entitled to a distribution under the Plan cannot be located on the Distribution Date, such distributions shall be set aside and maintained by the Reorganized Debtor.  Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed distribution within one year after the first distribution is made to such holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against Debtor, Reorganized Debtor, the Estate, the Distribution Fund, or their respective properties or assets.  In such cases, any cash held by Reorganized Debtor for distribution on account of such claims for undeliverable or unclaimed distributions, including any interest that has accrued on such undeliverable or unclaimed distribution shall become "Unclaimed Property", notwithstanding any federal or state escheat laws to the contrary and shall be available for immediate distribution by Reorganized Debtor.

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Reorganized Debtor shall hold any amounts returned in respect of such non-negotiated checks. The holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to Reorganized Debtor. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed by Final Order, and all requests for reissuance by the holder of the Allowed Claim in respect of a voided check are required to be made before such date. Thereafter, all such amounts shall be deemed to be "Unclaimed Property", and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against Reorganized Debtor.

**4.11     Tax Provisions**.   Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or other exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any state or local law imposing a stamp tax transfer tax, or similar tax or fee.

**4.12     Setoffs.**  Debtor may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed Amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that Debtor may have against the claimant.  Neither the failure to setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim Debtor may have against such claimant. No holder of an Allowed Claim, however, shall be able to setoff, suspend, freeze, or recoup any amount from funds and other payments that such holder may owe to the Debtors.  **THE CONFIRMATION ORDER**

**SHALL CONSTITUTE AN INJUNCTION PREVENTING SUCH SETOFF, SUSPENSION, FREEZE, OR RECOUPMENT.**

**4.13    Interest.**  Except as expressly stated in the Plan, or allowed by the Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

**4.14    Objections to Claims.**  Debtor or Reorganized Debtor (as applicable) shall have the exclusive authority to file objections to Claims.  Debtor or Reorganized Debtor (as applicable) shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to Claims.  All Claims marked or otherwise scheduled as contingent, unliquidated or disputed on the Schedules and for which no Proof of Claim has been timely filed, shall be deemed disallowed and such Claims shall be expunged as of the Effective Date without the necessity of filing a claim objection and without further notice to, or action, order or approval of the Bankruptcy Court.  Pursuant to Section 1111(a) of the Bankruptcy Code, a proof of a Claim is deemed filed under Section 501 of the Bankruptcy Code if that Claim is included in the Schedules filed by Debtor under Section 1106(a)(2) of the Bankruptcy Code unless the Claim is scheduled as disputed, contingent, or unliquidated.  Such a disputed, contingent, or unliquidated claim must be asserted by its holder, or an indenture trustee representing such holder, by the timely filing of a proof of claim.  If a proof of claim is not filed in a timely manner, the Claim shall be deemed to be disallowed.  Debtor shall have the right to object to and contest the allowance of any Claim that is Filed or deemed Filed with the Court, whether or not such Claim was scheduled as disputed, contingent or unliquidated.

**4.15    No Distributions Pending Allowance.**  Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**4.16    Distributions after Allowance.**  Reorganized Debtor shall make payments and distributions to each holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of this Plan governing the class of Claims to which such holder belongs.

**4.17    Fractional Dollars.**  Notwithstanding any other provision of this Plan, cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

**4.18    Compliance with Tax Requirements.**  With respect to any person from whom a tax identification number or other tax information required by law has not been received by the Reorganized Debtor within thirty (30) days from the date of such request (the "Initial Request"), Reorganized Debtor may, at its option, withhold the amount required to such person and decline to make such distribution until the information is received.  Failure of any person to provide the information requested within six months of the Initial Request shall result in the forfeit of the affected distribution.

8

## ARTICLE 5:  ACCEPTANCE OR REJECTION OF THE PLAN

**5.01  Presumed Acceptance of Plan**.  Allowed Administrative Claims are not Impaired under the Plan, and, therefore, are not classified and conclusively are presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code.

**5.02  Deemed Non-Acceptance of Plan**.  Class 5 is deemed to have rejected the Plan and will not be solicited for acceptances or rejections of the Plan.

**5.03  Voting Classes**.  Each holder of an Allowed Claim in Classes 1, 2, 3 and 4 shall be entitled to vote to accept or reject the Plan.

**5.04  Acceptance by Impaired Classes**.  An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than those designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than those designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**5.05  Non-Consensual Confirmation**.  Debtor requests confirmation of the Plan under Section 1129(b) of the Bankruptcy Code in view of the deemed non-acceptance by Class 5, which is Impaired.  Subject to Section 1127 of the Bankruptcy Code, Debtor reserves the right to modify the Plan to the extent that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE 6:  CONDITIONS PRECEDENT

**6.01  Conditions to Confirmation.**  It is a condition to confirmation of the Plan that the Confirmation Order include the following provisions:

(a)  authorizing the filing and adoption of the Amended and Restated Certificate of Incorporation and By-laws;

(b)  authorizing the issuance of the New Common Stock;

(c)  authorizing all of the other transactions contemplated by the Plan in order to effectuate the Plan;

(d)  making the provisions of the Confirmation Order non-severable and mutually dependent;

(e)  finding that the provisions of Section 1146 of the Bankruptcy Code are applicable to the Plan and distributions thereunder;

(f)  determining that no further governmental approvals are necessary for consummation of the transactions described in the Plan; and

(g)     finding that the Plan was proposed in good faith and that Debtor and the Buyer have acted in good faith when consummating the Plan.

**6.02    Conditions to the Effective Date**.  It is a condition to the occurrence of the Effective Date that:

(a)     the Confirmation Order contain the provisions set forth in Section 6.01 of the Plan (unless waived in accordance with the provisions of Section 6.03);

(b)     the Confirmation Order shall be in full force and effect and shall not have been reversed, stayed, modified or amended; and

(c)     all documents reasonable and necessary to evidence the transactions described in the Plan shall be in form and substance satisfactory to the necessary parties thereto and shall be properly executed and delivered.

**6.03    Waiver of Conditions**.  Debtor may waive any condition set forth in this Article 6 or any provision of the Plan at any time, without notice, without leave of the Court, and without any formal action other than

## ARTICLE 7:  EFFECTS OF PLAN CONFIRMATION

**7.01    Satisfaction of Claims.**  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against Debtor or its Estate, and their assets, properties, or interests in property.  Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in Debtor shall be satisfied, discharged, and released in full.

**7.02    Discharge.**  Except as otherwise expressly provided in the Plan or Confirmation Order, as of the Effective Date, Debtor shall be discharged pursuant to Section 1141(d) of the Bankruptcy Code from, and the Confirmation Order shall operate as an injunction against, the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset, any Claim and any "debt" (as that term is defined in Section 101(12) of the Bankruptcy Code) and any Equity Interest (or Claims or debt related thereto) from or against Debtor or Reorganized Debtor, and Debtor's and Reorganized Debtor's liability in respect thereof shall be extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, or arising from any agreement of Debtor entered into or obligation of any kind of Debtor incurred before the Confirmation Date, or from any conduct of Debtor occurring prior to the Confirmation Date or that otherwise arose before the Confirmation Date (including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the date of commencement of the Reorganization Case), and Debtor and Reorganized Debtor shall be released and discharged from any liability of a kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or deemed filed under Section 501 of

10

the Bankruptcy Code, such Claim is allowed under Section 502 of the Bankruptcy Code, or the holder of such Claim has accepted the Plan.

**7.03    Term of Injunctions or Stays**.  Unless otherwise provided herein, all injunctions or stays provided for in the Reorganization Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**7.04    Release of Liens.**  On the Effective Date all mortgages, deeds of trust, liens, pledges, or other security interests against any property of Debtor's Estate or the Vested Assets shall be fully released and discharged.  Holders of Secured Claims shall cause the release of all such mortgages, deeds of trust, liens, pledges or other security interests that are filed of record in any jurisdiction to be promptly released of record prior to receiving any payments under this Plan.

**7.05    Retention of Causes of Action/Reservation of Rights.**

(a)    Reorganized Debtor shall hold and have the right to prosecute all of Debtor's Recovery Actions that consist of claims and causes of action against third parties.  Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action that Debtor or Reorganized Debtor may have or which Reorganized Debtor may choose to assert under any provision of the Bankruptcy Code or any similar applicable non-bankruptcy law, including, without limitation (i) any and all claims against any entity to the extent such entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against Debtor, Reorganized Debtor, their officers, directors or representatives, (ii) the avoidance of any transfer by or obligation of Debtor, or (iii) the turnover of any property, all of which are expressly reserved by the Plan.

(b)    Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Recovery Action, right of setoff or other legal or equitable defense against or with respect to any claim left unaltered or unimpaired by the Plan. Reorganized Debtor shall have, retain, reserve and be entitled to assert all Recovery Actions,, rights of setoff and other legal or equitable defenses of Debtor fully as if the Reorganization Case had not been commenced; and all of Reorganized Debtor's legal and equitable rights respecting any claim left unaltered or unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Reorganization Case had not been commenced.  In particular and in no way limiting the definition of Recovery Actions, Debtor and Reorganized Debtor reserve all claims against prior management of Debtor including claims against Bruce Foster and Lynda Pandolfo arising from their service as an officer of Debtor.

(c)    In accordance with Section 1123(b)(3) of the Bankruptcy Code, Reorganized Debtor shall have the right to prosecute all Recovery Actions.  THIS PLAN DOES NOT AND IS NOT INTENDED TO RELEASE ANY OBJECTIONS TO CLAIMS OR CLAIMS AND CAUSES OF ACTION AGAINST THIRD PARTIES.  ALL SUCH RIGHTS, CLAIMS AND CAUSES OF ACTION ARE SPECIFICALLY RESERVED TO REORGANIZED DEBTOR.

(d)      Notwithstanding any other provision in the Plan or otherwise, no payment or distribution shall be made with respect to any Claim if any portion of the Claim is subject to an objection filed with the Court.

(e)      Reorganized Debtor shall have the right to prosecute all Recovery Actions to the extent Reorganized Debtor determines that any Recovery Actions should be investigated and prosecuted.

**7.06    Post-Consummation Effect of Evidences of Claims or Equity Interests**. Outstanding notes, stock certificates and other evidences of Claims against or Equity Interests in Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan, if any.

**7.07    Injunctions. EXCEPT AS PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS OR ENTITIES WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A DEBT OR CLAIM, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DEBT OR CLAIM: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST REORGANIZED DEBTOR OR AGAINST REORGANIZED DEBTOR'S ASSETS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST REORGANIZED DEBTOR OR AGAINST THE REORGANIZED DEBTOR'S ASSETS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST REORGANIZED DEBTOR OR AGAINST THE REORGANIZED DEBTOR'S ASSETS; (IV) ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO REORGANIZED DEBTOR OR AGAINST REORGANIZED DEBTOR'S ASSETS; AND (V) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN OR THE CONFIRMATION ORDER. THE CONFIRMATION ORDER SHALL CONSTITUTE SUCH AN INJUNCTION. ANY PERSON OR ENTITY INJURED BY ANY WILLFUL VIOLATION OF SUCH INJUNCTION SHALL RECOVER ACTUAL DAMAGES, INCLUDING ATTORNEYS' FEES AND COSTS, AND, IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES FROM THE WILLFUL VIOLATOR.**

## ARTICLE 8:  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01    Assumption of Executory Contracts and Unexpired Leases**.  On or before the Effective Date, and to the extent permitted by applicable law, all executory contracts and unexpired leases of Debtor shall be assumed or rejected in accordance with the provisions of Sections 365 and 1123 of the Bankruptcy Code.  Unless provided for otherwise in the Confirmation Order, confirmation of the Plan will constitute a determination that no defaults exist in the executory contracts and unexpired leases assumed by Debtor.  For a period of 60

days after the Confirmation Date, Reorganized Debtor may file a motion to assume any executory contract or unexpired lease that has not been previously rejected.

Contracts or leases entered into after the Petition Date will be performed by Reorganized Debtor in the ordinary course of business.

**8.02    Rejection of Executory Contracts and Unexpired Leases.**   All executory contracts and unexpired leases that exist between Debtor and any entity that are not assumed by Debtor or Reorganized Debtor are hereby rejected, except for any executory contract or unexpired lease (i) that has been entered into by Debtor after the Petition Date in the ordinary course of business or pursuant to an order of the Court, (ii) as to which a motion for approval of the assumption or assignment of such executory contract or unexpired lease has been filed prior to 60 days after the Confirmation Date and such assumption is approved by Court, or (iii) is assumed pursuant to Section 8.01 hereof.

**8.03    Approval of Assumption or Rejection of Contracts and Leases.**  Entry of the Confirmation Order shall constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of (i) the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.02 hereof, and (ii) the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.01 hereof.

**8.04    Claims Based on Rejection of Executory Contracts or Unexpired Leases**. Any Claims arising out of the rejection of executory contracts or unexpired leases must be filed with the Court within the time set by any Final Order rejecting an executory contract or unexpired lease or within 30 days after the Effective Date.   Any Claims not filed within such time will be forever barred from assertion against Debtor, Reorganized Debtor, or the Estate and their property.   Unless otherwise ordered by the Court or provided in this Plan, all such Claims for which proofs of Claim are required to be filed will be classified as Class 4 Claims.

## ARTICLE 9:  RETENTION OF JURISDICTION

**9.01    Retention of Jurisdiction**.  Notwithstanding the entry of the Confirmation Order or the Effective Date having occurred, to the maximum extent permitted by the Bankruptcy Code or other applicable law, the Court shall retain original and exclusive jurisdiction to (a) determine any Disputed Claims, (b) determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of professionals and other parties entitled thereto, (c) resolve controversies and disputes regarding interpretation and implementation of the Plan, (d) enter orders in aid of the Plan, including, without limitation, appropriate orders (which may include contempt or other sanctions) to protect Debtor and Reorganized Debtor in accordance with Sections 524 and 1141 of the Bankruptcy Code and the terms and conditions of the Confirmation Order, (e) modify the Plan pursuant to the Plan, (f) determine any and all applications, adversary proceedings and contested or litigated matters pending on or after the Effective Date, (g) allow, disallow, estimate, liquidate or determine any Claim or Equity Interest and to enter or enforce any order requiring the filing of any such Claim before a particular date, (h) determine any and all pending applications for the rejection of executory contracts or unexpired leases, or for the assignment of assumed executory contracts and unexpired leases, and to hear and determine any and all Claims

13

arising from any such rejection, assumption and/or assignment, (i) determine any actions or controversies arising under or in connection with the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement created in connection with the Plan, (j) enter and implement orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, (k) enter a final decree closing the Reorganization Case, and (l) enter and implement orders as are necessary to the transactions described in this Plan.

**9.02    Failure of Court to Exercise Jurisdiction**.  If the Court abstains from exercising or declines to exercise jurisdiction, or determines that it is otherwise without jurisdiction over any matter or proceeding arising out of related to or otherwise connected with the Reorganization Cases, including the matters set forth in this Article 9, the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter or proceeding shall not be limited or otherwise affected by the Plan.

**9.03    Modification of Plan.**  Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and any applicable notice requirements, Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation or to revoke or withdraw the Plan prior to the Confirmation Date.  If Debtor revokes or withdraws the Plan, or if confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in Debtor, or (b) prejudice in any manner the rights of Debtor.

**9.04    Severability.**  If, prior to confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court will have the power, solely upon the request of Debtor, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE 10:  DESCRIPTION OF DEBTOR AND OPERATIONS

**10.01   Assets of Debtor**.  Debtor's assets consist principally of its ownership interests in other business entities, cash, and any Bankruptcy Chapter 5 claims and causes of action. Debtor's assets include the following:

(a)      Cash of approximately $10,000 as of September 30, 2016;

(b)      Ownership interests in each Nondebtor Subsidiary and affiliates as shown on Exhibit B attached hereto; and

(c)      Any Recovery Actions.

14

**10.02   Current Business Activity.**   Debtor's indirect affiliate, Pinwrest, owns certain intellectual property referred to as "IsoBLOX™" that Debtor believes has commercial viability. Debtor indirectly owns 72% of Pinwrest[2] and Pinwrest holds U.S. Patent 8,220,072 for the IsoBLOX™ technology (the "Patent").[3]   After current management assumed control of the Debtor in February 2016, such management worked to stabilize the business by: bringing Debtor's books and records up to date; fulfilling orders to Pinwrest' s primary customer; and hiring a consultant for Pinwrest to maintain and develop potential customer relationships. Debtor's management believes that after further development Pinwrest will be able to license and distribute the IsoBLOX™ technology in protective gear within the aerospace and youth, teen and adult sports markets; however, further development of the Patent requires recapitalization of Debtor as set forth in the Plan.

**10.03   Prior Bankruptcy Case.**   On April 6, 2011 Debtor and all of its domestic wholly owned subsidiaries filed voluntary petitions for relief under Title 11 of the Code in the United States Bankruptcy Court for the Southern District of New York, which bankruptcy cases were jointly administered under Case No. 11-11607 (the "Prior Bankruptcy Case").  At the time of its bankruptcy filing in 2011, Debtor was involved in children's television programming and licensed merchandise that related to such programming, including, for example, home videos, toys, and trading cards.  Its business was specialized in the youth oriented market, with operations in the following business segments: (i) licensing, (ii) advertising media and broadcast, (iii) television and film production/distribution, and (iv) gaming.  Debtor emerged from bankruptcy and in accordance with its Chapter 11 plan reincorporated in Delaware under the name "4Licensing Corporation."  On July 23, 2014, the Bankruptcy Court issued a final decree closing Debtor's bankruptcy case in New York.   More information regarding Debtor's bankruptcy case in New York is available in the Appendix.  Debtor's prior lines of  business are more fully described in the "Disclosure Statement with Respect to Debtors' Proposed Joint Plan of Reorganization" filed and approved in the Prior Bankruptcy Case.  Debtor has filed an appendix in Debtor's bankruptcy case at Docket No. 23 that includes certain of the more significant pleadings from the Prior Bankruptcy Case.

**10.04   Financial Projections.**   Financial projections for Reorganized Debtor and assumptions underlying such projections are found on Exhibit C attached hereto.

**10.05   Prescott Claims and Interests.**

(a)   <u>Secured Debt</u>.  Debtor is indebted to Prescott pursuant to Prescott Notes 1, 2, 3, and 4 issued as follows: $1,500,000 issued on March 25, 2014; $200,000 issued on October 23, 2015; $31,800 issued on January 4, 2016; and $9,500 issued on January 29, 2016.  Repayment of the Prescott Notes is secured pursuant to the terms and conditions of various security instruments and

---

[2] Debtor owns 100% of 4L Technology, Inc, that owns 72% of Pinwrest.

[3] The Patent covers a protective shin guard for use in products in the athletic, recreational, police/military, medical and industrial sectors consisting of an elastomeric sleeve within which is deposited protective plastic material consisting of rigid plates joined together by living hinges.  The protective plastic material is solid enough to provide protection, flexible enough to better fit the wearer of the shin guard and is lightweight.  The products covered by the Patent provide body protection systems and devices that can be incorporated into articles of clothing, materials or articles such as seats, linings, or walls of vehicles to reduce the effects of impact.  These body protection devices can form part of headgear, gear, or clothing that is designed to cover and protect one or more parts of a person, such as a military or law enforcement individual, or a professional or recreational athlete.

15

Prescott has a lien on, or security interest in, the significant majority of the assets of Debtor.  The amount of the Prescott Allowed Secured Claim shall be $1,843,488 and will be a Class 2 Claim under the Plan.

(b)        Prescott Ownership Interests.  Prescott has owned common stock in Debtor and Debtor's predecessor since November 2008 and such ownership has been reflected in various Form 13G and Form 13D filings with the SEC.  Prescott accumulated approximately 2.4 million shares of Debtor's common stock from November 2008 to March 2009.

### 10.06   Rudd Claims and Interests.

(a)        Secured Debt.  Debtor is indebted to Rudd pursuant to the Rudd Note.  Repayment of the Rudd Note is secured pursuant to the terms and conditions of various security instruments and Rudd claims a lien on, or security interest in, the significant majority of the assets of Debtor.  The Rudd Allowed Claim is shall be $100,575 and will be a Class 3 Claim under the Plan.  The Rudd Note was issued on July 8, 2015 in the principal amount of $95,000.  Rudd has agreed that its Allowed Secured Claim will be treated similarly to the Prescott Allowed Secured Claim even though it may have perfected its lien in assets of the Debtor prior in time to the perfection of Prescott and Debtor has agreed to waive any objection to Rudd's perfection of its Secured Claim.

(b)        Rudd Ownership Interests.  Rudd has owned common stock in Debtor since at least January 30, 2015 and such ownership has been reflected in various Form 13D filed with the SEC.

### 10.07   Post-Petition Activities of Debtor.

(a)        Continued Operations.  On or after the Petition Date, Debtor filed several motions relating to the operation of its business.  The Court has entered orders that have allowed Debtor to continue operations during the Reorganization Case.  Debtor also sought to retain and employ the law firm of Tomlins & Peters, PLLC as bankruptcy counsel to Debtor.  The limited business operations of Debtor have continued without interruption or material change since the Petition Date.  Results of Debtor's operations since the Petition Date have been filed with the Court on a regular basis as part of Debtor's Monthly Operating Reports.  Since the Petition Date, Debtor has generated sufficient cash to sustain its operations.

(b)        Revenues.  Debtor's indirect subsidiary Pinwrest periodically receives revenue from its key aerospace customer that utilizes the IsoBLOX technology in the manufacture of aircraft seats.

(c)        Appointment of Committee.  No committee of creditors has been appointed in the Reorganization Case.

**10.08   History of Debtor.**  Debtor was originally organized as a New York corporation in 1970 and was formerly known as 4Kids Entertainment, Inc. ("4Kids").  In February, 2016, the Debtor had no operating capital and its President and Chief Executive Officer announced his resignation and was replaced by Phil Frohlich, the President of Prescott, as President of Debtor.  Mr. Frohlich has served as President of Debtor since that time without compensation.  Upon his

16

appointment, Mr. Frohlich gathered the corporate books and records of Debtor, moved many of them to Tulsa, Oklahoma, and otherwise took control of the Debtor's business and affairs.  Prior to February, 2016, Mr. Frohlich was not an officer or director of Debtor and Prescott was a secured creditor and shareholder of Debtor.

On the Petition Date, Debtor engaged in limited business operations due primarily to a lack of working capital and during its bankruptcy has had no paid employees.

**10.09   Class 4 Claims.**  Debtor estimates that unsecured creditors may assert claims of no less than $1,352,816.33 that will be included in Class 4.  This amount consists of claims owed to vendors and others that extended credit terms to Debtor prior to the Petition Date, rejection claims and amounts owed to other creditors.  Debtor is presently aware of the following creditors that may hold Class 4 Claims and the Plan deems each of such Class 4 Claims as Allowed Claims except as noted below:

| | |
|---|---|
| Prescott Group Aggressive Small Cap | $1,030,689.00 |
| Cleveland Capital Management LLC | $   158,507.00 |
| Leslie G. Rudd Living Trust | $     56,231.00 |
| Continental Stock Transfer & Trust Company | $     10,295.88 |
| Bruce Foster | $     83,333.00* |
| Jed Mullens Law | $       6,058.92 |
| Kenneth Klopp | $       5,000.00 |
| Lynda Pandolfo | $       2,500.00 |
| Forest Electric Corp. | $          201.53 |
| Total | $1,352,816.33 |

*The Claim of Bruce Foster shall be Allowed for purposes of voting only and the Debtor or Reorganized Debtor may object to the allowance of such claim.

Pursuant to the Plan, all Old Equity will be cancelled.  Upon information and belief, Debtor believes that significant holders of Old Equity include the following:

| | **Name and Address of Beneficial Owner** | **Shares (1)** | **% Ownership** |
|---|---|---|---|
| | Prescott Group Capital Management, L.L.C. (2) | 2,414,209 | 16.1% |
| | The Leslie Rudd Living Trust (3) | 769,231 | 5.1% |
| | Ken Feldman (4) | 1,903,266 | 12.7% |
| | Roger Goodspeed (5) | 958,973 | 6.4% |
| | Alfred R. Kahn (6) | 1,332,663 | 8.9% |
| | Cleveland Capital Management LLC (7) | 497,100 | 3.3% |
| | Wade I. Massad (8) | 37,200 | 0.2% |

17

| | | | |
|---|---|---:|---:|
| | Bruce R. Foster | 17,500 | 0.1% |
| | Other Common Shareholders | 7,023,166 | 47.0% |
| | **Total Common Shares Outstanding** | **14,953,308** | **100.0%** |

| | |
|---|---|
| 1) | Unless otherwise indicated, each holder possesses sole voting and investment power over the shares of common stock listed as beneficially owned.  All ownership numbers are based on the most recent SEC filings. |
| 2) | According to a Schedule 13D/A filed with the SEC on January 13, 2016, Prescott Group Capital Management, L.L.C. has sole voting power and sole dispositive power with respect to all of the shares reported as beneficially owned. |
| 3) | According to a Schedule 13D filed with the SEC on February 25, 2015. |
| 4) | According to a Schedule 13G/A filed with the SEC on June 26, 2015, Mr. Feldman is the beneficial owner of all of the shares and has sole voting and dispositive power over the shares, including sole voting and dispositive power over 754,500 shares owned by Kenira Holdings, LLC, of which Mr. Feldman is the sole owner and managing member. |
| 5) | According to a Schedule 13D filed with the SEC on March 11, 2015, Mr. Goodspeed has sole voting power with respect to all of the shares reported as beneficially owned. |
| 6) | According to a Schedule 13G/A filed with the SEC on March 11, 2014, Alfred R. Kahn has sole voting and sole dispositive power with respect to all of the shares reported as beneficially owned. |
| 7) | According to a Schedule 13D filed with the SEC on April 16, 2015, consists of 497,100 shares held by Cleveland Capital Management LLC. Mr. Massad may be deemed to beneficially own the shares of common stock held by Cleveland Capital Management LLC. |

## ARTICLE 11:  SOLICITATION OF INDICATIONS OF INTEREST

In the months prior to the Petition Date, Debtor attempted to solicit interest in the purchase of Debtor's indirect 72% interest in Pinwrest, which owns the IsoBLOX technology. Debtor believes that this asset accounts for the vast majority of Debtor's value.  Debtor sought potential bidders by soliciting Debtor's 5% shareholders, all debt holders of the Debtor, all parties known to Debtor to have inquired in the past regarding purchase of the Debtor's interest in Pinwrest, and other parties that Debtor reasonably believed might be interested in purchasing Pinwrest or its assets. In September 2016 an information summary soliciting interest was sent to each potential purchaser and a separate email address was established for replies in order to manage the process.  Debtor did not receive any indications of interest from parties solicited by Debtor.  Additionally, since the current management of the Debtor assumed control of Debtor in February, 2016, the Debtor has received no expressions of interest in any transaction structure whereby new capital would be available to fund the Debtor or Pinwrest in any manner.

Any party that desires to submit a bid for the New Common Stock being purchased by Buyer in an amount in excess of that amount offered by Buyer shall submit a competing bid and notify counsel to the Debtor no less than ten (10) days before the Confirmation Hearing Date.  In

the event Debtor's counsel receives a competing bid, and such competing bidder is reasonably determined by Debtor to be a qualified bidder submitting a qualified bid, an auction shall be held at the office of Debtor's counsel on the date three (3) business days before the Confirmation Hearing Date (the "Auction").  At the Auction, the following procedures shall apply:

    (a) Buyer and any qualified bidder that has submitted a qualified bid no less than ten (10) days before the Confirmation Hearing Date shall be allowed to participate at the Auction.

    (b) Potential bidders must demonstrate to Debtor and its counsel their capacity to complete the transaction by furnishing reasonably satisfactory financial information regarding the potential bidder that evidences its ability to consummate a purchase of New Common Stock in cash on the Effective Date on terms no less favorable to Debtor than those set forth herein.

    (c) Any initial competing bid must exceed Buyer's purchase offer by $20,000 (in other words an initial competing bid must be no less than $482,673) and further competing bids must be made in increments of not less than $10,000.  Bidders will be allowed to bid until such time as only one bidder has submitted the highest offer.

    (d) Any competing bid must be in a form substantially identical to Buyer's purchase offer and the competing bidder must be willing to close on the purchase of the New Common Stock as provided in the Plan.

    (e) Such bid shall not be subject to any further due diligence review or financing contingencies.

    (f) The party submitting the high bid at the Auction shall be considered the "Buyer" under this Plan.

## ARTICLE 12:  TAX ATTRIBUTES OF PLAN AND NEW COMMON STOCK

**12.01   Tax Losses**.  Debtor generated significant losses prior to the Petition Date that have been reflected on its filed income tax returns.  As of December 31, 2015, and as reflected in its Federal Income Tax Return filed for 2015, Debtor had approximately $118 million of federal tax net operating losses ("NOL").  Following the Effective Date, any NOL of the Reorganized Debtor allocable to periods before the Effective Date (collectively, the "Pre-Change Losses") will be held by Reorganized Debtor and generally be subject to limitation under Section 382 of the Internal Revenue Code ("IRC") as a result of an "ownership change" of the Reorganized Debtor.  Under IRC Section 382, if a corporation undergoes an "ownership change," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation.

In general, the amount of the annual limitation to which a corporation that undergoes an "ownership change" would be subject is equal to the product of (a) the fair market value of the stock of the corporation immediately before the "ownership change" multiplied by (b) the "long-term tax-exempt rate" (which is the highest of the adjusted federal long-term rates in effect for any month in the 3-calendar-month period ending with the calendar month in which the "ownership change" occurs).  As discussed below, special rules may apply in the case of a corporation that experiences an ownership change as the result of a bankruptcy proceeding.

An exception to the foregoing annual limitation rules generally applies when so-called "qualified creditors" of a debtor corporation in Chapter 11 receive, in respect of their Claims,

which constitute "qualified indebtedness" at least 50 percent of the vote and value of the stock of the reorganized debtor pursuant to a confirmed Chapter 11 plan (the "382(l)(5) Exception"). "Qualified Indebtedness" is generally indebtedness held by the same beneficial owner for the last 18 months prior to the petition date, or indebtedness that arose in the ordinary course of the trade or business of the debtor and has been owned at all times by the same beneficial owner.   Under the 382(l)(5) Exception, a debtor's Pre-Change Losses are not limited on an annual basis, but, instead, NOL carryforwards will be reduced by the amount of any interest deductions claimed during the three taxable years preceding the effective date of the plan of reorganization, and during the part of the taxable year prior to and including the effective date of the plan of reorganization, in respect of all debt converted into stock in the reorganization. If the 382(l)(5) Exception applies and the Reorganized Debtor undergoes another "ownership change" within two years after the Effective Date, then the Pre-Change Losses effectively would be eliminated in their entirety.

While Debtor believes that certain Claims may qualify as "qualified indebtedness," Debtor has not yet made a final determination whether that the Plan and the transactions thereunder will qualify for the 382(l)(5) Exception, but even if the transaction qualifies for the 382(l)(5) Exception, the Reorganized Debtor may decide to elect out of the 382(l)(5) Exception, particularly if it appears likely that another ownership change will occur within two years after emergence from Chapter 11.

THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  THE SUMMARY INCLUDED HEREIN DOES NOT DISCUSS ALL ASPECTS OF INCOME TAXATION THAT MAY BE RELEVANT TO DEBTOR OR ANY PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES.  ALL PARTIES SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS COMPLETED BY THIS PLAN.

**12.02   New Common Stock.**

The New Common Stock to be issued pursuant to the Plan constitutes securities for which there will be only a limited market, and no public market, and there can be no assurance as to the development or liquidity of any market for such securities.  The New Common Stock will be subject to restrictions on transfer and holders will be restricted under applicable securities laws in their ability to transfer or sell their securities.  Holders of such securities may experience difficulty in reselling such securities or may be unable to sell them at all.

## ARTICLE  13:  VOTING AND CONFIRMATION OF THE PLAN

**13.01   Classification of Claims and Interests.**  The Plan divides the Claims against and Equity Interests in Debtor into 5 classes) and sets forth the treatment offered each class.  Section 101(5) of the Bankruptcy Code defines "claim" broadly as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment,

20

whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

In order for the holder of a claim to participate in a plan of reorganization and receive the treatment offered to the class in which it is classified, the claim must be "allowed." A claim is allowed under the Bankruptcy Code if such claim or a portion thereof either:

(i)     has been scheduled in a bankruptcy filing, is not scheduled as disputed, contingent or unliquidated, and is not subject to any pending objection timely filed by any party-in-interest, or

(ii)    has been timely filed by way of a proof of claim with the court and

    (A)     is not subject to an objection filed within any period for objections fixed by the Bankruptcy Code, the Bankruptcy Rules, or an order of the court, or

    (B)     the court has allowed the claim despite an objection.

Pursuant to Section 1122 of the Bankruptcy Code, claims and interests must be grouped into classes or "classified" under a plan of reorganization. All claims or interests within a particular class must be substantially similar to each other, and must in general receive the same treatment as each other, except to the extent that a particular holder agrees to a less favorable treatment. Debtor believes that the classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.

In the event of an amendment or modification of the classification scheme under the Plan, Debtor intends to use, to the extent permitted by the Court and the Bankruptcy Code, each acceptance received by Debtor pursuant to this solicitation for the purpose of obtaining the acceptance of the Class of which a holder of Claims or Equity Interests is ultimately deemed to be a member. It is possible that reclassification of Claims or Equity Interests could affect the Classes in which such Claims or Equity Interests were initially classified, or another Class under the Plan, by changing the composition of such Classes and the votes of the members thereof required for acceptance of the Plan by such Classes. A reclassification of Claims or Equity Interests after this solicitation could require a re-solicitation of acceptances.

**13.02   Impairment of Claims and Interests.**   The Bankruptcy Code requires that, in order to be confirmed, a plan of reorganization must specify whether a class of claims or interests is "impaired" by its treatment under such plan. A claim or interest is "impaired" unless the plan:

(i)     leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder thereof; or

(ii)    with certain exceptions, cures any default which occurred before or after the commencement of the chapter 11 case, reinstates the original maturity of the claim or interest, compensates the holder for any damages resulting from any reasonable reliance by the holder on a contractual provision or applicable law that permits acceleration of the debt and does not otherwise alter the legal, equitable or

21

contractual rights to which such claim or interest entitles the holder of such claim or interest.

Under the Plan, Classes 2, 3, 4 and 5 are Impaired.

**13.03   Solicitation of Impaired Classes and Voting.**  A class of claims or interests that is not impaired under a plan of reorganization is deemed under the Bankruptcy Code to have accepted the plan.   Therefore, solicitation of acceptances with respect to such class is not required.  A class that does not receive or retain any property under the Plan is deemed to have rejected the plan.   With the transmittal of the Plan and the Ballots, Debtor is soliciting acceptances from the holders of Claims in Classes 2, 3 and 4 because each such Class of Claims is impaired under the Plan, and is, therefore, entitled to vote on the Plan.  Class 5 is deemed to have rejected the Plan and will not be solicited for acceptances or rejections of the Plan.

Section 1125 of the Bankruptcy Code requires that disclosure of "adequate information" be made to all impaired creditors and interest holders at the time of or before solicitation of acceptances of a plan of reorganization.   Section 1125 defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical, reasonable investor typical of holders of the claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan."  Section 1125 defines an "investor typical of holders of claims or interests of the relevant class" as an investor having, among other things, "such ability to obtain such information from sources other than the disclosure required by Section 1125 as holders of claims or interests in such class generally have."

Debtor believes that it is transmitting the Plan to substantially all holders of Impaired Claims in connection with this solicitation, and that the Plan satisfies the requirements of Section 1125 with regard to "adequate information" provided by a disclosure statement under the Bankruptcy Code.

For an impaired class of claims to be determined to have accepted a plan of reorganization, the holders of at least two-thirds in amount and more than one-half in number of the claims of the holders within such class who actually vote must accept the plan.

As described above, under the Bankruptcy Code plan confirmation does not require that each holder of a claim or interest vote in favor of a plan.   A plan may be confirmed if the requisite number and amount of votes are obtained to constitute acceptance by each impaired class.  If one or more impaired classes do exist, the plan must be accepted by at least one class of impaired claims to be confirmed, without considering the votes of "insiders" as defined by the Bankruptcy Code.   Alternatively, if certain requirements are met, a court can confirm a plan notwithstanding the nonacceptance by a class of impaired claims or interests.  This is generally referred to as "cram down" as provided for in Section 1129(b) of the Bankruptcy Code.

Because Class 5 is deemed to have rejected the Plan, Debtor will seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code.  If necessary, Debtor shall ask the Court to

confirm the Plan notwithstanding the rejection by one or more Classes of Impaired Claims or Equity Interests in the event that any such Impaired Class of Claims or Equity Interests rejects the Plan.

Finally, it is possible that even if all Classes of Claims accept the Plan, the Court may not confirm the Plan if it finds that certain other requirements for confirmation have not been met.

**13.04  Possible Post-Solicitation, Pre-Confirmation Events.**  Debtor reserves the sole right, in accordance with the Bankruptcy Code, to amend or modify the Plan as the result of substantive or technical objections to the Plan filed by holders of Claims or Equity Interests, or as a result of any other matter that may affect Debtor's ability to obtain confirmation of the Plan or if for any other reason such amendment or modification is determined by Debtor to be in its best interest.  Such amendment or modification may occur before or after objections to the Plan, if any, are filed or even after confirmation of the Plan.

Debtor reserves the right to use the Ballots of holders of Claims to obtain confirmation with respect to any modified Plan so long as the amendment does not materially and adversely affect the treatment of the Class of Claims and Equity Interests under the Plan whose votes Debtor seeks to use.  If the Plan is so amended or modified, a holder of a Claim may change or withdraw its ballot only for cause shown and pursuant to a request made within the time fixed for acceptance or objection of the Plan.

**13.05  Confirmation Procedures and Requirements.**

Section 1129 of the Bankruptcy Code sets forth specific requirements for confirmation of a plan.  Among other things, the Court must find that a plan is "proposed in good faith" and not by any means forbidden by law, that it makes certain specified disclosures, and that it provides that any payment made to any person in connection with such plan and incident to the reorganization case be reasonable and subject to the Court's approval.  In addition, the plan and the plan proponent must comply with the provisions of the Bankruptcy Code, the plan must satisfy the "best interest of creditors" test and the plan must be feasible.

Section 1129(a)(7) of the Bankruptcy Code provides that before a plan can be confirmed, the Court must determine that the plan provides, with respect to each impaired class of claims or interests, that each holder of a claim or interest in an impaired class either:

(i)     has accepted the plan, or

(ii)    will receive or retain under the plan property of a value, as of the effective date of the plan that is not less than such would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

The Plan provides for a reorganization of Debtor and the issuance of the New Common Stock and Debtor believes that the provisions of Section 1129(a)(7) will be satisfied with respect to the Plan.  Debtor contends that the Plan will result in creditors receiving more than they would receive in a Chapter 7 bankruptcy case.  A liquidation analysis for Debtor is attached hereto as Exhibit D.

The Bankruptcy Code requires for plan confirmation if the Court determines that the confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor.  Since the Plan provides for the reorganization of Debtor and the issuance of the New Common Stock, and payments under the Plan are not dependent on future operations of Reorganized Debtor, Debtor believes the Plan meets the feasibility requirement of the Bankruptcy Code.

If all of the requirements of Section 1129(a) of the Bankruptcy Code are met except for the requirement that each class of impaired claims or interests accept the Plan, the Court, on the request of Debtor, may confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if such Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the Plan.

The requirement that a plan not "discriminate unfairly" means, among other things, that a dissenting class must be treated substantially equally with respect to other classes of equal rank. Debtor believes that the Plan does not unfairly discriminate against any Class that may not accept or otherwise consent to the Plan.

Tests for defining the term "fair and equitable" are contained in Section 1129(b)(2) of the Bankruptcy Code.  A plan is deemed fair and equitable with respect to an impaired class of unsecured claims if each member of the class receives or retains on account of its claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim, or alternatively, no holder of a claim or interest that is junior to the claims of the rejecting class of unsecured creditors will receive or retain any value under the plan on account of such junior claims or interests.  This test is sometimes referred to as the "absolute priority" rule because it entitles any rejecting class to have its claims satisfied in full before junior classes receive or to retain any value under the plan of reorganization.

Debtor believe that the Plan could be confirmed under Section 1129(b) of the Bankruptcy Code because no Class of Claims or Equity Interests junior to Class 4 would receive or retain any property in the event of a Chapter 7 liquidation of Debtor.

Holders of Claims in Classes 2 through 4 are requested to complete an appropriate Ballot, in accordance with the instructions set forth thereon.  If any Ballots are damaged or lost, or if a holder has any questions concerning the voting instructions, it may contact Tomlins & Peters, PLLC at the mailing address or email address indicated on the Ballot.  Each holder that holds Claims in more than one Class is required to vote separately with respect to each Class in which such holder holds Claims.  A holder may not split its vote within a Class of Claims or Equity Interests.  Incomplete and unsigned Ballots will be returned to the holder of such Claim or Equity Interest.

All votes to accept or reject the Plan must be cast by using the Ballot enclosed with the Disclosure Statement.  No other votes will be counted.  A properly completed and executed Ballot must be received no later than 4:00 p.m. Central Time on the Expiration Date by Neal Tomlins, the Balloting Agent, at the following address:

24

> Neal Tomlins
> TOMLINS & PETERS, PLLC
> Southern Hills Tower Suite 305
> 2431 East 61st Street
> Tulsa, Oklahoma 74136
> Email: Neal@tplawtulsa.com

Ballots must be returned by U.S. mail, hand delivery, electronic mail or overnight mail.

## ARTICLE 14:  MISCELLANEOUS PROVISIONS

**14.01  Modification of Plan.**  Debtor reserves the sole right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, Reorganized Debtor or Debtor may seek to amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**14.02  Withdrawal of Plan**.   Debtor reserves the right, at any time prior to the entry of the Confirmation Order, to revoke and withdraw the Plan.  If Debtor revokes or withdraws the Plan under this section, or if entry of the Confirmation Order does not occur, then the Plan shall be deemed null and void.  In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against or any Equity Interests in Debtor, to prejudice in any manner the rights of Debtor in any further proceedings involving Debtor, or constitute an admission against interest by Debtor or any other party in interest.

**14.03  Headings**.  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affects the provisions of the Plan.

**14.04  Successors and Assigns**.  The rights, benefits and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assign of such person or entity.

**14.05  Payment of Statutory Fees**.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid by Debtor and Debtor will prepare and file post-confirmation status reports with the Office of the United States Trustee until the Reorganization Case is closed.

**14.06  Notices**.  Any notice, request or demand given or made under this Plan or under the Bankruptcy Code or the Bankruptcy Rules shall be in writing and shall be hand delivered or sent by a reputable overnight courier and shall be deemed given when received at the following addresses whether hand delivered or sent by overnight courier service:

> 4Licensing Corporation
> 1924 South Utica Avenue
> Suite 1120
> Tulsa, OK  74104

25

With a copy to:

> Neal Tomlins, OBA No. 10499
> TOMLINS & PETERS, PLLC
> Southern Hills Tower Suite 305
> 2431 East 61st Street
> Tulsa, Oklahoma 74136
> Email: Neal@tplawtulsa.com
>
> Counsel to Debtor

**14.07   Severability of Plan Provisions**.  If prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a final judicial determination and shall provide that each term and provision of the Plan as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.08   Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**14.09   No Admissions**.  Notwithstanding anything herein to the contrary, nothing herein contained in the Plan shall be deemed as an admission by Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification.

**14.10   Professionals.**  Professional fees and expenses from and after the Confirmation Date for Debtor, its estate and Reorganized Debtor shall not be subject to the approval of the Court.   The retention of the professional persons of Debtor shall terminate as of the Effective Date, and at such time such professional persons shall be entitled to file and prosecute their respective fee applications for final allowance of compensation and reimbursement of expenses.   Such final fee applications shall be filed with the Court no later than forty five (45) days after entry of the Confirmation Order, unless such deadline is extended by order of the Court.   Any application that is not timely filed shall be forever barred.   The Court shall retain jurisdiction to determine all such requests for compensation.

**14.11   Governing Law.**  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law are applicable, the rights and obligations arising under the Plan shall

be governed by, and construed and enforced in accordance with, the laws of the State of Oklahoma, without giving effect to the principles of conflicts of law thereof.

**14.12 Withholdings.**  In connection with the Plan and transfers and distributions thereunder, Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements.

## ARTICLE 15:  RECOMMENDATION AND CONCLUSION

The "cram down" provisions of Section 1129(b) of the Bankruptcy Code permit confirmation of the Plan even if the Plan is not accepted by all impaired Classes of Claims and Equity Interests.  Because holders of Class 5 Equity Interests will not receive or retain any property on account of such Equity Interests, they are deemed not to have accepted the Plan pursuant to Section 1126(a) of the Bankruptcy Code.  Debtor will seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code in view of the deemed non-acceptance by Class 5 and the possible non-acceptance by other Classes in connection with this solicitation.

For all of the reasons set forth herein, Debtor believes that the confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, Debtor urges all holders of Classes 2 through 4 Claims to vote to ACCEPT the Plan, and to duly complete and return their ballots so that they will be ACTUALLY RECEIVED on or before 4:00 p.m. Central Time on the Expiration Date.  Debtor requests confirmation of the Plan under Sections 1129(a) and/or 1129(b) of the Bankruptcy Code.

Dated this 4th day of November, 2016.

> **4LICENSING CORPORATION,** a Delaware corporation
> and Debtor and Debtor in Possession
>
> By: /s/ Phil Frohlich
>        President
>
> Debtor's Counsel:
>
> /s/ Neal Tomlins
> Neal Tomlins, OBA No. 10499
> TOMLINS & PETERS, PLLC
> Southern Hills Tower Suite 305
> 2431 East 61st Street
> Tulsa, Oklahoma 74136
> Phone: (918) 949-4411
> Email: Neal@tplawtulsa.com

ATTACHMENTS:

> EXHIBIT A:  Defined Terms and Rules of Interpretation
>
> EXHIBIT B:  Nondebtor Subsidiaries
>
> EXHIBIT C:  Financial Projections
>
> EXHIBIT D:  Liquidation Analysis

# EXHIBIT A

## EXHIBIT A TO 4LICENSING CORPORATION PLAN

A. **Definitions.**

Certain capitalized terms used in the Plan are defined in this Exhibit A.  Other capitalized terms found in the Plan shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules (and shall be construed in accordance with the rules of construction thereunder).

1. *Administrative Claim* means a Claim for payment of an administrative expense of a kind specified in Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including (without limitation) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Debtor such fees for legal, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2. *Allowed Administrative Claim* means all or that portion of an Administrative Claim that either (a) has been allowed by a Final Order as an Administrative Claim, or (b) was incurred by Debtor in the ordinary course of business during the Reorganization Case, and is determined to be due, owing, valid and enforceable by Debtor.

3. *Allowed* means that portion of any Claim or Equity Interest, other than an Administrative Claim, (a) as to which (x) no proof of claim or interest has been Filed and (y) the liquidated and noncontingent amount of which is scheduled by Debtor pursuant to the Bankruptcy Code in the Schedules as undisputed, or (b) as to which a proof of claim or interest has been timely Filed in a liquidated amount with the Court pursuant to the Bankruptcy Code, or late Filed with leave of the Court after notice and a hearing, provided that (x) no objection to the allowance of such Claim or Equity Interest or motion to expunge such claim or interest has been interposed before any final date for the filing of such objections or motions, or (y) if such objection or motion has been Filed, such objection or motion has been overruled by a Final Order (but only to the extent such objection or motion has been overruled), or (c) as to which a Final Order has been entered allowing such Claim or Equity Interest.

4. *Ballot* means the ballot upon which holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

5. *Bankruptcy Code* means Title 11 of the United States Code, as now in effect or hereafter amended.

6. *Bankruptcy Rules* means, collectively, the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2015 and the general and local rules of the Court, as applicable from time to time in the Reorganization Case.

7. *Bar Date* means the bar date for filing proofs of claim or interest against Debtor that has been established by order of the Court as December 20, 2016.

**8.** ***Business Day*** means any day except a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

**9.** ***Buyer*** means Phil Frohlich, the person who will be purchasing New Common Stock for cash pursuant to the Plan.

**10.** ***Claim*** means a claim against Debtor, whether asserted or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

**11.** ***Class*** means a category of holders of Claims or Equity Interests as defined in Article 2 of the Plan.

**12.** ***Confirmation Date*** means the date on which the Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**13.** ***Confirmation Hearing Date*** means the date on which the hearing on confirmation of the Plan is first scheduled to commence before the Court.

**14.** ***Confirmation Order*** means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**15.** ***Consummation*** means the occurrence of the Effective Date and substantial consummation of the transactions described in the Plan including the sale of the New Common Stock to Buyer.

**16.** ***Court*** means the United States Bankruptcy Court for the Northern District of Oklahoma and, to the extent it may exercise jurisdiction in the Reorganization Case, the United States District Court for the Northern District of Oklahoma, or if either such court ceases to exercise jurisdiction over the Reorganization Case, such other court that exercises jurisdiction over the Reorganization Case.

**17.** ***Debtor*** is defined in the preamble to the Plan.

**18.** ***Disputed*** means, in reference to a Claim or Equity Interest, any Claim or Equity Interest not otherwise Allowed whereby Debtor or Reorganized Debtor have interposed a timely objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Court, which objection or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of determining whether a particular Claim is a Disputed Claim before the expiration of any period of limitation fixed for the interposition of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

**19.** ***Distribution Date*** means the date that all Class 4 Claims have been finally determined and on which the Distribution Fund is distributed to holders of Allowed Class 4 Claims.

**20.** ***Distribution Fund*** means the fund established pursuant to this Plan in the amount of $10,000 that will be held and administered by the Reorganized Debtor pursuant to the terms and conditions of this Plan and used to pay Allowed Class 4 Claims.

21.     *Effective Date* means a date selected by Debtor that is no less than fourteen (14) days after entry of the Confirmation Order and not later than December 31, 2016 on which all conditions to the Effective Date set forth in the Plan have been satisfied or, if capable of being waived, duly and expressly waived.

22.     *Entity* means an entity as defined in Section 101(15) of the Bankruptcy Code.

23.     *Equity Interest(s)* means the rights of holders of Old Equity.

24.     *Estate* means the estate created for Debtor in the Reorganization Case pursuant to Section 541 of the Bankruptcy Code.

25.     *Exchange Act* means the Securities and Exchange Act of 1934, as amended.

26.     *Expiration Date* means 4:00 p.m. Central Time on the date fixed by the Court after which Ballots with respect to the Plan may no longer be accepted by Debtor without leave of the Court.  A separate notice from the Court will indicate the Expiration Date.

27.     *File, Filed or Filing* means file, filed or filing with the Court and the Clerk of the Court in the Reorganization Case.

28.     *Final Order* means an order of the Court (a) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing in form and substance satisfactory to Debtor; or (c) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (i) such order of the Court shall have been affirmed by the highest court to which such order was appealed; (ii) certiorari has been denied as to such order; or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

29.     *Impaired* means when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

30.     *New Common Stock* means the shares of Common Stock par value $0.01 per share of Reorganized Debtor authorized pursuant to an Amended and Restated Certificate of Incorporation for Reorganized Debtor, all of which are to be issued and distributed to Buyer, Prescott and possibly Rudd in accordance with the Plan constituting 100% of the total number of shares of such New Common Stock to be issued and outstanding immediately after the Effective Date.

31.     *Nondebtor Subsidiary* means any of the following:  4Kids Entertainment Licensing, Inc.; TC Digital Games LLC; 4Kids Websites, Inc.; 4LC Sports & Entertainment, Inc.; 4LC Technology, Inc.; or Pinwrest.

**32.** *Old Equity* means the common and any preferred stock issued by Debtor and outstanding prior to the Effective Date including any redemption rights, warrants, options, liquidation preferences and dividend claims.

**33.** *Person* shall have the meaning set forth in the Bankruptcy Code.

**34.** *Petition Date* means September 21, 2016.

**35.** *Pinwrest* means Pinwrest Development Group, LLC, a limited liability company organized under the laws of the State of Delaware.

**36.** *Plan* means the Combined Plan of Reorganization and Disclosure Statement for Debtor and all exhibits annexed hereto or referenced herein, as it may be amended or modified by Debtor from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms and conditions of the Plan.

**37.** *Prescott means* Prescott Group Aggressive Small Cap Masterfund, GP.

**38.** *Prescott Note 1 means* that certain Promissory Note in the original principal amount of $1,500,000 dated March 25, 2014.

**39.** *Prescott Note 2 means* that certain Promissory Note in the original principal amount of $200,000 dated October 23, 2015.

**40.** *Prescott Note 3 means* that certain Promissory Note in the original principal amount of $31, 800 dated January 4, 2016.

**41.** *Prescott Note 4 means* that certain Promissory Note in the original principal amount of $9,500 dated January 29, 2016.

**42.** *Prescott Secured Claim* means any Claim held by Prescott that is secured by a valid, binding, enforceable, perfected and unavoidable lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**43.** *Priority Claim* means an Allowed Claim against Debtor for an amount entitled to priority under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

**44.** *Recovery Actions* means those claims of Debtor that arise under Sections 544, 547, 548, 549 and 550 of the Bankruptcy Code, Sections 112 through 123 of Title 24, Oklahoma Statutes, or otherwise under applicable law.

**45.** *Reorganization Case* means Debtor's bankruptcy case under Chapter 11 of the Bankruptcy Code.

**46.**      ***Reorganized Debtor*** means 4Licensing Corporation, a Delaware corporation, on and after the Effective Date.

**47.**      ***Rudd*** means the Leslie G. Rudd Living Trust.

**48.**      ***Rudd Note*** means that certain Promissory Note in the original principal amount of $95,000 dated July 8, 2015.

**49.**      ***Rudd Secured Claim*** means any Claim held by Rudd that is secured by a valid, binding, enforceable, perfected and unavoidable lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**50.**      ***Schedules*** means, collectively, the schedules of assets and liabilities and the statements of financial affairs, as amended, Filed by Debtor in the Reorganization Case, pursuant to Section 521 of the Bankruptcy Code, the Bankruptcy Rules and the Official Bankruptcy Forms.

**51.**      ***SEC*** means the U.S. Securities and Exchange Commission.

**52.**      ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

**53.**      ***Tax Claim*** means an Allowed Claim for an amount entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**54.**      ***Unsecured Claim*** means any Claim against Debtor that is not an Administrative Claim, a Secured Claim, a Priority Claim, a Tax Claim, the Prescott Secured Claim, or the Rudd Secured Claim.

**55.**      ***Vested Assets*** means all assets of the Estate (including all right, title and interest in and to any assets, contracts, claims and causes of action, properties and businesses, and ownership interests in other entities as the same shall exist as of the Effective Date of every kind, type, whether tangible or intangible, known or unknown, real, personal, or mixed, and wherever located) that will vest in Reorganized Debtor on the Effective Date.

B.  **Rules of Interpretation, Computation of Time and Governing Law.**

(a)      **Rules of Interpretation.**   For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) if the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the exhibit shall control; (d) unless otherwise specified, all references in the Plan to Articles, Sections, Clauses and Exhibits are references to

Articles, Sections, Clauses and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with any other provision in this Section.

(b) **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c) **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Oklahoma, without giving effect to the principles of conflicts of law thereof.

# EXHIBIT B



# EXHIBIT C

| | $ Value | % Owned | | |
|---|---|---|---|---|
| Prescott Seasoned Debt | $1,588,027 | 94.0% | | |
| Rudd Seasoned Debt | $100,575 | 6.0% | | |
| **Total Converted Debt** | **$1,688,602** | **100.0%** | | |

| | | | |
|---|---|---|---|
| Value of 4K Tech Stock (100% owned by 4LC) | $857,143 | | |
| Prescott Reinstated Unseasoned Debt | $112,633 | | |
| **Net 4LC Equity Value** | **$744,510** | | |

| **New Money Amount & Valuation** | **$ Value** | **% Owned** | **Shares** | **Price/Share** |
|---|---|---|---|---|
| Pre-Money Equity Value of 4LC | $744,510 | 61.7% | 61,673 | $12.07 |
| **New Equity Investment** | **$462,673** | **38.3%** | **38,327** | **$12.07** |
| Post-Money Equity Value of 4LC | $1,207,182 | 100.0% | 100,000 | $12.07 |

| **If: Rudd Pari Passu - Pro Forma Ownership** | **$ Value** | **% Owned** | **Shares** | **Price/Share** |
|---|---|---|---|---|
| Prescott | $700,166 | 58.0% | 58,000 | $12.07 |
| Rudd | $44,344 | 3.7% | 3,673 | $12.07 |
| Frohlich | $462,673 | 38.3% | 38,327 | $12.07 |
| Total | $1,207,182 | 100.0% | 100,000 | $12.07 |

| **If: Rudd First Out - Pro Forma Ownership** | **$ Value** | **% Owned** | **Shares** | **Price/Share** |
|---|---|---|---|---|
| Prescott | $643,934 | 53.3% | 53,342 | $12.07 |
| Rudd | $100,575 | 8.3% | 8,331 | $12.07 |
| Frohlich | $462,673 | 38.3% | 38,327 | $12.07 |
| Total | $1,207,182 | 100.0% | 100,000 | $12.07 |

| | $ Value | % Owned | Shares | Price/Share |
|---|---|---|---|---|
| Prescott Seasoned Debt | $1,588,027 | 94.0% | | |
| Rudd Seasoned Debt | $100,575 | 6.0% | | |
| **Total Converted Debt** | **$1,688,602** | **100.0%** | | |
| | | | | |
| Value of 4K Tech Stock (100% owned by 4LC) | | $857,143 | | |
| Prescott Reinstated Unseasoned Debt | | $156,977 | | |
| **Net 4LC Equity Value** | | **$700,166** | | |

| **New Money Amount & Valuation** | **$ Value** | **% Owned** | **Shares** | **Price/Share** |
|---|---|---|---|---|
| Pre-Money Equity Value of 4LC | $700,166 | 58.0% | 58,000 | $12.07 |
| **New Equity Investment** | **$507,017** | **42.0%** | **42,000** | **$12.07** |
| Post-Money Equity Value of 4LC | $1,207,182 | 100.0% | 100,000 | $12.07 |

| **If: Rudd Pari Passu - Pro Forma Ownership** | **$ Value** | **% Owned** | **Shares** | **Price/Share** |
|---|---|---|---|---|
| Prescott | $700,166 | 58.0% | 58,000 | $12.07 |
| Rudd | $0 | 0.0% | 0 | #DIV/0! |
| Frohlich | $507,017 | 42.0% | 42,000 | $12.07 |
| Total | $1,207,182 | 100.0% | 100,000 | $12.07 |

| **If: Rudd First Out - Pro Forma Ownership** | **$ Value** | **% Owned** | **Shares** | **Price/Share** |
|---|---|---|---|---|
| Prescott | $599,591 | 49.7% | 49,669 | $12.07 |
| Rudd | $100,575 | 8.3% | 8,331 | $12.07 |
| Frohlich | $507,017 | 42.0% | 42,000 | $12.07 |
| Total | $1,207,182 | 100.0% | 100,000 | $12.07 |

**Pinwrest Development (72% owned by 4LC) Pro Forma Balance Sheet**

|  | Sept 2016 | BK Adj. | Balance | New Inv. | PF PINW |
|---|---|---|---|---|---|
| Total Cash | $20,000 | $0 | $20,000 | $416,667 | $436,667 |
| Receivables | $0 | $0 | $0 | $0 | $0 |
| Prepaid Expenses | $0 | $0 | $0 | $0 | $0 |
| Inventory | $135,255 | $0 | $135,255 | $0 | $135,255 |
| Investment in Pinwrest | $0 | $0 | $0 | $0 | $0 |
| PP&E | $0 | $0 | $0 | $0 | $0 |
| Patents | $1,460,802 | $0 | $1,460,802 | $0 | $1,460,802 |
| Tax Assets & NOLs | $0 | $0 | $0 | $0 | $0 |
| Other | $0 | $0 | $0 | $0 | $0 |
| **Total Assets** | **$1,616,058** | **$0** | **$1,616,058** | **$416,667** | **$2,032,724** |
| | | | | | |
| Trade Payables | $425,581 | $0 | $425,581 | $0 | $425,581 |
| Note Payable ST | $0 | $0 | $0 | $0 | $0 |
| Note Payable LT | $0 | $0 | $0 | $0 | $0 |
| Interest Payable | $0 | $0 | $0 | $0 | $0 |
| Deferred Revenue | $0 | $0 | $0 | $0 | $0 |
| Capital Lease | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | **$425,581** | **$0** | **$425,581** | **$0** | **$425,581** |
| **Equity** | **$1,190,476** | **$0** | **$1,190,476** | **$416,667** | **$1,607,143** |
| **Total Liabilities & Equity** | **$1,616,058** | **$0** | **$1,616,058** | **$416,667** | **$2,032,724** |
| Check: | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |

**4Licensing Corporation Pro Forma Balance Sheet**

| 4LC | 4LC | 4KTECH | Consolidated | BK Adj. | Balance | New Inv. | PF 4LC |
|---|---|---|---|---|---|---|---|
| | | **BK Start (Sept 2016)** | | | | | |
| Total Cash | $10,000 | $0 | $10,000 | ($10,000) | $0 | $40,039 | $40,039 |
| Receivables | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Prepaid Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Inventory | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Investment in Pinwrest (72% Owned) | $0 | $857,143 | $857,143 | $0 | $857,143 | $300,000 | $1,157,143 |
| PP&E | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Patents | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Tax Assets & NOLs | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Assets** | **$10,000** | **$857,143** | **$867,143** | **($10,000)** | **$857,143** | **$340,039** | **$1,197,182** |
| | | | | | | | |
| Unsecured Claims | $266,192 | $0 | $266,192 | ($256,192) | $10,000 | ($10,000) | $0 |
| Rudd Secured Claim | $100,575 | $0 | $100,575 | ($100,575) | $0 | $0 | $0 |
| Prescott Note 1 | $1,588,027 | $0 | $1,588,027 | ($1,588,027) | $0 | $0 | $0 |
| Prescott Notes 2, 3 & 4 | $255,461 | $0 | $255,461 | ($142,827) | $112,633 | ($112,633) | $0 |
| Deferred Revenue | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Capital Lease | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | **$2,210,255** | **$0** | **$2,210,255** | **($2,087,622)** | **$122,633** | **($122,633)** | **$0** |
| **Equity** | **($2,200,255)** | **$857,143** | **($1,343,112)** | **$2,077,622** | **$734,510** | **$462,673** | **$1,197,182** |
| **Total Liabilities & Equity** | **$10,000** | **$857,143** | **$867,143** | **($10,000)** | **$857,143** | **$340,039** | **$1,197,182** |
| Check: | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |

**Pinwrest Development (72% owned by 4LC) Pro Forma Balance Sheet**

| | Sept 2016 | BK Adj. | Balance | New Inv. | PF PINW |
|---|---:|---:|---:|---:|---:|
| Total Cash | $20,000 | $0 | $20,000 | $416,667 | $436,667 |
| Receivables | $0 | $0 | $0 | $0 | $0 |
| Prepaid Expenses | $0 | $0 | $0 | $0 | $0 |
| Inventory | $135,255 | $0 | $135,255 | $0 | $135,255 |
| Investment in Pinwrest | $0 | $0 | $0 | $0 | $0 |
| PP&E | $0 | $0 | $0 | $0 | $0 |
| Patents | $1,460,802 | $0 | $1,460,802 | $0 | $1,460,802 |
| Tax Assets & NOLs | $0 | $0 | $0 | $0 | $0 |
| Other | $0 | $0 | $0 | $0 | $0 |
| **Total Assets** | **$1,616,058** | **$0** | **$1,616,058** | **$416,667** | **$2,032,724** |
| | | | | | |
| Trade Payables | $425,581 | $0 | $425,581 | $0 | $425,581 |
| Note Payable ST | $0 | $0 | $0 | $0 | $0 |
| Note Payable LT | $0 | $0 | $0 | $0 | $0 |
| Interest Payable | $0 | $0 | $0 | $0 | $0 |
| Deferred Revenue | $0 | $0 | $0 | $0 | $0 |
| Capital Lease | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | **$425,581** | **$0** | **$425,581** | **$0** | **$425,581** |
| **Equity** | **$1,190,476** | **$0** | **$1,190,476** | **$416,667** | **$1,607,143** |
| **Total Liabilities & Equity** | **$1,616,058** | **$0** | **$1,616,058** | **$416,667** | **$2,032,724** |
| Check: | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |

**4Licensing Corporation Pro Forma Balance Sheet**

| 4LC | 4LC | 4KTECH | Consolidated | BK Adj. | Balance | New Inv. | PF 4LC |
|---|---|---|---|---|---|---|---|
| | | | BK Start (Sept 2016) | | | | |
| Total Cash | $10,000 | $0 | $10,000 | ($10,000) | $0 | $40,039 | $40,039 |
| Receivables | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Prepaid Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Inventory | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Investment in Pinwrest (72% Owned) | $0 | $857,143 | $857,143 | $0 | $857,143 | $300,000 | $1,157,143 |
| PP&E | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Patents | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Tax Assets & NOLs | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Assets** | **$10,000** | **$857,143** | **$867,143** | **($10,000)** | **$857,143** | **$340,039** | **$1,197,182** |
| | | | | | | | |
| Unsecured Claims | $266,192 | $0 | $266,192 | ($256,192) | $10,000 | ($10,000) | $0 |
| Rudd Secured Claim | $100,575 | $0 | $100,575 | ($56,231) | $44,344 | ($44,344) | $0 |
| Prescott Note 1 | $1,588,027 | $0 | $1,588,027 | ($1,588,027) | $0 | $0 | $0 |
| Prescott Notes 2, 3 & 4 | $255,461 | $0 | $255,461 | ($142,827) | $112,633 | ($112,633) | $0 |
| Deferred Revenue | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Capital Lease | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | **$2,210,255** | **$0** | **$2,210,255** | **($2,043,278)** | **$166,977** | **($166,977)** | **$0** |
| **Equity** | **($2,200,255)** | **$857,143** | **($1,343,112)** | **$2,033,278** | **$690,166** | **$507,017** | **$1,197,182** |
| **Total Liabilities & Equity** | **$10,000** | **$857,143** | **$867,143** | **($10,000)** | **$857,143** | **$340,039** | **$1,197,182** |
| Check: | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |

| Pinwrest Income Statement | FYE Dec 31, 2017 | | | | FYE Dec 31, 2018 | | | |
|---|---|---|---|---|---|---|---|---|
| | 3 Mo. End 3/31/17 | 3 Mo. End 6/30/17 | 3 Mo. End 9/30/17 | 3 Mo. End 12/31/17 | 3 Mo. End 3/31/18 | 3 Mo. End 6/30/18 | 3 Mo. End 9/30/18 | 3 Mo. End 12/31/18 |
| Baseball | $0 | $58,350 | $146,050 | $88,050 | $0 | $31,850 | $93,050 | $77,975 |
| Soccer | $0 | $0 | $69,500 | $32,100 | $0 | $0 | $69,500 | $32,100 |
| Football | $0 | $0 | $0 | $290,000 | $843,750 | $121,875 | $0 | $290,000 |
| Hockey | $0 | $0 | $0 | $101,250 | $253,350 | $67,875 | $0 | $101,250 |
| Aerospace | $57,000 | $57,000 | $95,000 | $95,000 | $114,000 | $114,000 | $114,000 | $114,000 |
| **Total Revenue** | **$57,000** | **$115,350** | **$310,550** | **$606,400** | **$1,211,100** | **$335,600** | **$276,550** | **$615,325** |
| | | | | | | | | |
| Baseball | $0 | $21,895 | $54,154 | $31,095 | $0 | $11,598 | $33,561 | $26,980 |
| Soccer | $0 | $0 | $15,135 | $6,926 | $0 | $0 | $15,135 | $6,926 |
| Football | $0 | $0 | $0 | $114,180 | $337,230 | $48,711 | $0 | $114,180 |
| Hockey | $0 | $0 | $0 | $37,810 | $109,044 | $29,152 | $0 | $37,810 |
| Aerospace | $22,800 | $22,800 | $38,000 | $38,000 | $45,600 | $45,600 | $45,600 | $45,600 |
| **Total COGS** | **$22,800** | **$44,695** | **$107,289** | **$228,011** | **$491,874** | **$135,061** | **$94,296** | **$231,496** |
| | | | | | | | | |
| Baseball | $0 | $36,456 | $91,896 | $56,955 | $0 | $20,252 | $59,489 | $50,995 |
| Soccer | $0 | $0 | $54,365 | $25,175 | $0 | $0 | $54,365 | $25,175 |
| Football | $0 | $0 | $0 | $175,820 | $506,520 | $73,164 | $0 | $175,820 |
| Hockey | $0 | $0 | $0 | $63,440 | $144,306 | $38,724 | $0 | $63,440 |
| Aerospace | $34,200 | $34,200 | $57,000 | $57,000 | $68,400 | $68,400 | $68,400 | $68,400 |
| **Total Gross Profit** | **$0** | **$36,456** | **$146,261** | **$321,390** | **$650,826** | **$132,140** | **$113,854** | **$315,430** |
| | | | | | | | | |
| Salaries | $75,900 | $75,900 | $75,900 | $75,900 | $75,900 | $75,900 | $75,900 | $75,900 |
| Professionals | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 |
| Insurance | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 |
| Rent | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 |
| Amortization of Patent | $12,173 | $36,520 | $36,520 | $36,520 | $36,520 | $36,520 | $36,520 | $36,520 |
| Other | $10,500 | $10,500 | $10,500 | $10,500 | $10,500 | $10,500 | $10,500 | $10,500 |
| **Total Overhead** | **$125,573** | **$149,920** | **$149,920** | **$149,920** | **$149,920** | **$149,920** | **$149,920** | **$149,920** |
| | | | | | | | | |
| **Income before Tax** | **($125,573)** | **($113,465)** | **($3,659)** | **$171,469** | **$500,906** | **($17,781)** | **($36,066)** | **$165,509** |
| Tax Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Income** | **($125,573)** | **($113,465)** | **($3,659)** | **$171,469** | **$500,906** | **($17,781)** | **($36,066)** | **$165,509** |

| Pinwrest Balance Sheet | | FYE Dec 31, 2017 | | | | FYE Dec 31, 2018 | | | |
|---|---|---|---|---|---|---|---|---|---|
| | PF PINW | 3/31/17 | 6/30/17 | 9/30/17 | 12/31/17 | 3/31/18 | 6/30/18 | 9/30/18 | 12/31/18 |
| Total Cash | $436,667 | $241,667 | $100,000 | $100,000 | $100,000 | $206,941 | $606,451 | $610,177 | $623,548 |
| Receivables | $0 | $19,000 | $38,450 | $103,517 | $202,133 | $403,700 | $111,867 | $92,183 | $205,108 |
| Prepaid Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Inventory | $135,255 | $142,855 | $150,153 | $171,018 | $211,259 | $299,213 | $180,275 | $166,687 | $212,420 |
| PP&E | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Patents | $1,460,802 | $1,448,629 | $1,412,109 | $1,375,589 | $1,339,069 | $1,302,549 | $1,266,029 | $1,229,509 | $1,192,989 |
| Tax Assets & NOLs | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Assets** | **$2,032,724** | **$1,852,151** | **$1,700,712** | **$1,750,124** | **$1,852,461** | **$2,212,403** | **$2,164,622** | **$2,098,556** | **$2,234,065** |
| | | | | | | | | | |
| Trade Payables | $425,581 | $370,581 | $315,581 | $260,581 | $205,581 | $175,581 | $145,581 | $115,581 | $85,581 |
| Note Payable ST | $0 | $0 | $17,026 | $125,097 | $110,964 | $0 | $0 | $0 | $0 |
| Note Payable LT | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Interest Payable | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Deferred Revenue | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Capital Lease | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | **$425,581** | **$370,581** | **$332,607** | **$385,678** | **$316,545** | **$175,581** | **$145,581** | **$115,581** | **$85,581** |
| **Equity** | **$1,607,143** | **$1,481,570** | **$1,368,105** | **$1,364,446** | **$1,535,915** | **$2,036,821** | **$2,019,041** | **$1,982,975** | **$2,148,484** |
| **Total Liabilities & Equity** | **$2,032,724** | **$1,852,151** | **$1,700,712** | **$1,750,124** | **$1,852,461** | **$2,212,403** | **$2,164,622** | **$2,098,556** | **$2,234,065** |
| Check: | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |

| Pinwrest Cash Flow | | FYE Dec 31, 2017 | | | | FYE Dec 31, 2018 | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 3 Mo. End 3/31/17 | 3 Mo. End 6/30/17 | 3 Mo. End 9/30/17 | 3 Mo. End 12/31/17 | 3 Mo. End 3/31/18 | 3 Mo. End 6/30/18 | 3 Mo. End 9/30/18 | 3 Mo. End 12/31/18 |
| Net Income | | ($125,573) | ($113,465) | ($3,659) | $171,469 | $500,906 | ($17,781) | ($36,066) | $165,509 |
| (+) Amortization | | $12,173 | $36,520 | $36,520 | $36,520 | $36,520 | $36,520 | $36,520 | $36,520 |
| (+/-) Change working cap | | ($81,600) | ($81,748) | ($140,932) | ($193,857) | ($319,521) | $380,771 | $3,272 | ($188,658) |
| **Cash From Operations** | | **($195,000)** | **($158,693)** | **($108,071)** | **$14,132** | **$217,905** | **$399,511** | **$3,726** | **$13,371** |
| Cash From Investing | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cash From Financing (Dividends Paid) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cash From Financing (Working Capital Line) | | $0 | $17,026 | $108,071 | ($14,132) | ($110,964) | $0 | $0 | $0 |
| **Total Cash Flow** | | **($195,000)** | **($141,667)** | **$0** | **$0** | **$106,941** | **$399,511** | **$3,726** | **$13,371** |
| | | | | | | | | | |
| Beginning Cash | | $436,667 | $241,667 | $100,000 | $100,000 | $100,000 | $206,941 | $606,451 | $610,177 |
| **Ending Cash** | | **$241,667** | **$100,000** | **$100,000** | **$100,000** | **$206,941** | **$606,451** | **$610,177** | **$623,548** |
| | | | | | | | | | |
| Memo: | | | | | | | | | |
| Loeb & Loeb Payments | | $25,000 | $25,000 | $25,000 | $25,000 | $0 | $0 | $0 | $0 |
| MLB Payments | | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 |

| 4LC Income Statement | FYE Dec 31, 2017 | | | | FYE Dec 31, 2018 | | | |
|---|---|---|---|---|---|---|---|---|
| | 3 Mo. End 3/31/17 | 3 Mo. End 6/30/17 | 3 Mo. End 9/30/17 | 3 Mo. End 12/31/17 | 3 Mo. End 3/31/18 | 3 Mo. End 6/30/18 | 3 Mo. End 9/30/18 | 3 Mo. End 12/31/18 |
| **Revenue** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | | |
| Accounting | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Legal | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Insurance | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Rent | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Other | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| **Total Overhead** | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| | | | | | | | | |
| **(+) Income from Inv. In Pinwrest (72%)** | ($90,413) | ($81,694) | ($2,635) | $123,458 | $360,652 | ($12,802) | ($25,968) | $119,167 |
| | | | | | | | | |
| Interest Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Income before Tax** | ($92,913) | ($84,194) | ($5,135) | $120,958 | $358,152 | ($15,302) | ($28,468) | $116,667 |
| Tax Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Income** | ($92,913) | ($84,194) | ($5,135) | $120,958 | $358,152 | ($15,302) | ($28,468) | $116,667 |

| 4LC Balance Sheet | | FYE Dec 31, 2017 | | | | FYE Dec 31, 2018 | | | |
|---|---|---|---|---|---|---|---|---|---|
| | PF 4LC | 3/31/17 | 6/30/17 | 9/30/17 | 12/31/17 | 3/31/18 | 6/30/18 | 9/30/18 | 12/31/18 |
| Total Cash | $40,039 | $37,539 | $35,039 | $32,539 | $30,039 | $27,539 | $25,039 | $22,539 | $20,039 |
| Receivables | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Prepaid Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Inventory | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Investment in Pinwrest | $1,157,143 | $1,066,730 | $985,036 | $982,401 | $1,105,859 | $1,466,511 | $1,453,709 | $1,427,742 | $1,546,909 |
| PP&E | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Patents | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Tax Assets & NOLs | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Assets** | **$1,197,182** | **$1,104,269** | **$1,020,075** | **$1,014,940** | **$1,135,898** | **$1,494,051** | **$1,478,749** | **$1,450,281** | **$1,566,948** |
| | | | | | | | | | |
| Trade Payables | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Note Payable | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Deferred Revenue | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Capital Lease | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Liabilities** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** |
| **Equity** | **$1,197,182** | **$1,104,269** | **$1,020,075** | **$1,014,940** | **$1,135,898** | **$1,494,051** | **$1,478,749** | **$1,450,281** | **$1,566,948** |
| **Total Liabilities & Equity** | **$1,197,182** | **$1,104,269** | **$1,020,075** | **$1,014,940** | **$1,135,898** | **$1,494,051** | **$1,478,749** | **$1,450,281** | **$1,566,948** |
| Check: | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 | $0.000 |

| 4LC Cash Flow | | FYE Dec 31, 2017 | | | | FYE Dec 31, 2018 | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 3 Mo. End 3/31/17 | 3 Mo. End 6/30/17 | 3 Mo. End 9/30/17 | 3 Mo. End 12/31/17 | 3 Mo. End 3/31/18 | 3 Mo. End 6/30/18 | 3 Mo. End 9/30/18 | 3 Mo. End 12/31/18 |
| Net Income | | ($92,913) | ($84,194) | ($5,135) | $120,958 | $358,152 | ($15,302) | ($28,468) | $116,667 |
| (+/-) Income from Inv. In Pinwrest | | $90,413 | $81,694 | $2,635 | ($123,458) | ($360,652) | $12,802 | $25,968 | ($119,167) |
| (+/-) Change working cap | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Cash From Operations** | | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** |
| (+) Cash From Investing (PNW Dividends) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cash From Financing | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Cash Flow** | | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** | **($2,500)** |
| | | | | | | | | | |
| Beginning Cash | | $40,039 | $37,539 | $35,039 | $32,539 | $30,039 | $27,539 | $25,039 | $22,539 |
| **Ending Cash** | | **$37,539** | **$35,039** | **$32,539** | **$30,039** | **$27,539** | **$25,039** | **$22,539** | **$20,039** |

# EXHIBIT D

# Hypothetical Liquidation Analysis for
## 4Licensing Corporation
## (UNAUDITED)

### Assets

| | Petition Date Book Value | Low Estimated Recovery Value | Estimated Recovery Rate | High Estimated Recovery Value | Estimated Recovery Rate |
|---|---|---|---|---|---|
| Cash | $10,000 | $10,000 | 100.0% | $10,000 | 100.0% |
| Interest in 4Licensing Tech Subsidiary | $857,143 | $257,143 | 30.0% | $600,000 | 70.0% |
| Total Assets/Proceeds | $867,143 | $267,143 | 30.8% | $610,000 | 70.3% |

### Chapter 7 Administrative Claims

| | Low Rcvry. | High Rcvry. |
|---|---|---|
| Trustee Fees | $100,000 | $25,000 |
| Trustee Counsel and Related | $75,000 | $30,000 |
| Wind-Down and Professional Fees | $75,000 | $30,000 |
| Total Liquidation Costs | $250,000 | $85,000 |
| Net Proceeds available to Creditors | $17,143 | $525,000 |

### Estimated Recovery to Creditors

| | Estimated Allowed Claim | Low Estimated Amount Paid | Estimated Recovery Rate | High Estimated Amount Paid | Estimated Recovery Rate |
|---|---|---|---|---|---|
| Rudd Secured Debt | $100,575 | $17,143 | 17.0% | $100,575 | 100.0% |
| Prescott Secured Debt | $1,843,488 | $0 | 0.0% | $424,425 | 23.0% |
| Administrative Claims | $17,000 | $0 | 0.0% | $0 | 0.0% |
| Cleveland and Foster Unsecured | $179,803 | $0 | 0.0% | $0 | 0.0% |
| Net Proceeds available to Creditors | | $17,143 | | $525,000 | |